1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES FARBER,

              Plaintiff,

     v.

SAFEWAY, INC.,

              Defendant.

Case No. CV-12-2508-JSC

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

       Now pending before the Court is Plaintiff's motion to remand this action to state court. (Dkt. No. 12). Plaintiff originally filed in Alameda County Superior Court, and Defendant removed to this Court asserting that at least some of Plaintiff's claims are preempted by § 301 of the Labor Management Relations Act. After careful consideration of the briefing submitted by the parties (Dkt. Nos. 12, 23, 25, 28 and 30), and having had the benefit of oral argument on September 13, 2012, the Court GRANTS Plaintiff's Motion to Remand and DENIES his request for fees and costs incurred as a result of the removal.

## BACKGROUND

### A.  Allegations of the Complaint

       In 1983 Plaintiff entered into a written agreement to work as a painter at Safeway's Milk Plant in San Leandro, California. (Dkt. No.1, 12 ¶8.) The agreement indicated he would be

1    hired as an independent contractor. (*Id.*) It was renewed in 1991, and Plaintiff continued to

2    work at the plant, classified as a contractor, through 2011. (*Id.* at 12-13 ¶¶9-17.)

3          In 2011 Plaintiff was told to do dangerous work such as removing black mold and

4    demolishing walls containing asbestos. (*Id.* at 16-17 ¶¶31-32.) He refused to do the work

5    without proper safety equipment and complained to other workers. (*Id.*) As a result, he was

6    assigned excessive work and subjected to constant scrutiny and hostility, forcing him to resign.

7    (*Id.* at 16-18 ¶¶31-35.)

8          Throughout Plaintiff's tenure at Safeway, the company exerted control over the

9    "manner and means" of his work. (*Id.* at 14 ¶20.) Although he was initially engaged as an

10   independent contractor and as a painter, he performed a variety of tasks assigned to him by a

11   direct supervisor. (*Id.* at 14-25 ¶¶20-25.) He was required to wear a company uniform and

12   punch in at a company time clock and his materials were either provided or paid for by

13   Safeway. (*Id.*) For the above reasons, he was thus erroneously classified as a contractor instead

14   of an employee. (*Id.*)

15         Plaintiff alleges five separate causes of action. First, Plaintiff alleges that Safeway

16   violated California Labor Code §1198 when it "willfully misclassified" him to avoid paying

17   overtime for working more than 8 hours in a day or 40 hours in a week. (Dkt. No. 1, 18 ¶¶37-

18   41.) Under state regulations, employees are entitled to time and a half for overtime. (*Id.*) He

19   also alleges that Safeway failed to pay wages twice during every calendar month as required for

20   employees under California Labor Code §204 (*Id.* at 19-20 ¶¶45-48), and that Safeway failed to

21   pay all wages and benefits owed to him at the time of his resignation, including overtime and

22   vacation pay in violation of Labor Code §202. (*Id.* at 20 ¶¶51-54.) His wrongful termination

23   cause of action alleges that the excessive and/or dangerous work assigned to him and the

24   hostility directed at him amounted to a constructive termination and that it came in retaliation

25   for his complaints about misclassification as a contractor and for his refusing take illegal actions

26   in the handling of toxic materials. (*Id.* at 21-22 ¶¶58-68.) Finally, Plaintiff's fraud cause of

27   action alleges the company misled him regarding his employment status, fraudulently obliging

28   him to assume responsibility for his own payroll taxes and depriving him of employee benefits.

1    (*Id.* at 23 ¶¶70-72.) Plaintiff seeks general and punitive damages, penalties and fines under the

2    California Labor Code, costs and attorneys fees.

3        B.   *Procedural History*

4        Plaintiff filed his complaint in Alameda County Superior Court on August 2, 2011 and

5    Defendant answered. The parties subsequently engaged in discovery, and in March of 2012

6    Defendant served Plaintiff with Special Interrogatories 1 through 14. (Dkt. No. 12-2, 4-21.)

7    Most of the interrogatories asked about what benefits Plaintiff believed he was entitled to

8    recover. (*Id.*) Many questions specifically asked about benefits under the Milk Products

9    Agreement, a Collective Bargaining Agreement ("CBA") between Safeway and the

10   International Union of Operating Engineers, Stationary Engineers Local 39 ("Local 39" or "the

11   Union"). Defendant was the first party to make any reference to the Milk Products Agreement

12   and a copy of the agreement was attached to first set of interrogatories "for [the Plaintiff's]

13   convenience." (*Id.* at 10:6-9; "Milk Products Agreement" Dkt. No. 3, 7-29.) The attached CBA

14   represented the current contract between Defendant and the Union detailing, among other

15   things, benefits afforded to Safeway employees in the Union.

16       Interrogatory 4 asked Plaintiff to "identify any benefit plans or programs" he believed he

17   "should have participated in or that [he] intends to use as the basis for calculating [his]

18   damages." (Dkt. No. 1, 8:22-24.) Plaintiff noted that his response was provided "without the

19   benefit of information in Safeway's custody possession and control regarding the benefits

20   afforded to its non-union employees." (*Id.* at 8-10.) He then listed the "Stationary Engineers

21   Local 39 Health and Welfare Trust Fund" as a program in which he may have been entitled to

22   participate or which he intends to use as a basis for calculating damages. (*Id.*) Interrogatory 5

23   asked: "Do you contend that you performed work covered by the various Milk Products

24   Agreements between Safeway, Inc. and International Union of Operating Engineers, Stationary

25   Engineers Local 39." (*Id.* at 10:6-8.) Subject to and without waiving various objections, Plaintiff

26   responded "Yes." (*Id.* at 10:21.) Interrogatory 6 asked Plaintiff to detail work he performed that

27   was covered by the Milk Products Agreement. (*Id.* at 10:23.) Plaintiff responded that he

28   performed many duties in addition to painting the facility, and he listed other work including

some work that overlapped with the duties performed by engineers who were covered under the agreement. (*Id.* at 10-12; Dkt. No. 3, 7-29.) When asked in Interrogatory 7 if he contended he "should have received wages and benefits in accordance with one or more Milk Products Agreements between Safeway Inc. and Stationary Engineers Local 39," Plaintiff responded that he "should have received the same benefits afforded all employees of the company." (Dkt. No. 1, 13:8.)

Based on the above answers to interrogatories, Defendant removed this action to this Court claiming Plaintiff's state-law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA" or § 301 ), which gives federal courts original jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. . ." 29 U.S.C. § 185. Plaintiff moved to remand for lack of subject matter jurisdiction. Oral argument on the Motion for Remand was heard September 13, 2012.

## LEGAL STANDARD

*A. Standards for Removal and Remand*

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant…." *Caterpillar Inc. v. Williams,* 482 U.S. 386 (1987). Removal statutes are strictly construed against removal, and a defendant bears the burden of showing that removal was proper. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Robles v. Gillig LLC,* 771 F. Supp. 2d 1181, 1183 (N.D. Cal. 2011).

In determining whether a court has jurisdiction over a plaintiff's claims, it may look beyond the face of the complaint and consider facts raised in the notice of removal. *See Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983) ("It is proper to use the petition for removal to clarify the action plaintiff presents and to determine if it encompasses an action within federal jurisdiction.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *B. Federal Jurisdiction Over Plaintiff's Claims*

2    "The presence or absence of federal-question jurisdiction is governed by the 'well-

3    pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal

4    question is presented on the face of the plaintiff's properly pleaded complaint."*Caterpillar Inc. v.*

5    *Williams,* 482 U.S. 386, 392 (1987). The plaintiff is "the master of the claim" and "may avoid

6    federal jurisdiction by exclusive reliance on state law." *Id.* Where Congress demonstrated an

7    intent to completely preempt an area of state law, however, a "well-pleaded complaint" not

8    explicitly stating a federal cause of action may nonetheless be removable to federal court if it

9    falls within the scope of a federal statute. *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th

10   Cir. 1988). "This is because the claim purportedly based on . . . [a] preempted state law is

11   considered from its inception a federal claim and therefore arises under federal law." *Valles v.*

12   *Ivy Hill Corp.*, 410 F.3d 1071, 1074 (9th Cir. 2005).

13   In passing § 301 of the Labor Management Relations Act ("LMRA" or § 301), Congress

14   intended to completely preempt claims "founded directly on rights created by a collective

15   bargaining agreement." *Caterpillar Inc.* 482 U.S. 386 at 394; *see also Valles*, 410 F.3d at 1074

16   ("The complete preemption exception to the well-pleaded complaint rule is applied primarily

17   under §301 of the LMRA"). In addition to preempting claims founded directly on rights created

18   by a CBA, § 301 preempts claims that are "substantially dependent on analysis" of a CBA.

19   *Caterpillar Inc.* 482 U.S. 386 at 394; *see also Rameriz v. Fox Television Station, Inc.*, 998 F.2d 743,

20   748 (9th Cir. 1993) ("A state-law claim is preempted by section 301 'if the resolution of a state-

21   law claim depends upon the meaning of a collective-bargaining agreement'") (quoting *Lingle v.*

22   *Norge Div. of Magic Chef, Inc.*, 486 U.S. 405-06 (1988)).

23   Thus, the Court must engage in a two-part inquiry. "[F]irst, an inquiry into whether the

24   asserted cause of action involves a right conferred upon an employee by virtue of state law, not

25   by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the

26   Court's] analysis ends there." *Burnside v. Kiewit Pacific Corp.,* 491 F.3d 1053, 1059 (9th Cir.

27   2007). "If, however, the rights exist independently of the CBA, [the Court] must still consider

28   whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining

agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Id.*

To determine whether a state law claim is "substantially dependent" on the terms of a CBA, the Court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Id.* For example, "looking to" the CBA to determine that none of its terms is reasonably in dispute, or referring to the bargained-for-wage rates to compute a penalty does not make a claim substantially dependent upon the CBA. *Id.; see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("when the meaning of contract terms is not the subject of dispute, the bare fact that collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished"). As the Ninth Circuit has explained:

> If the plaintiff's claim cannot be resolved without interpreting the applicable CBA- as, for example, in *Allis-Chalmers*, where the suit involved the employer's alleged failure to comport with its contractually established duties—it is preempted. Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA—as, for example, in *Lingle*, where the plaintiff was able to litigate her retaliation suit under state law without reference to the CBA-it is not preempted.

*Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). "Moreover, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of the CBA."*Id.*

### DISCUSSION

Here, under the first part of the preemption inquiry, Defendant concedes that Plaintiff's claims do not involve a right conferred by a CBA; instead, under the second part, Defendant contends that Plaintiff's answers to interrogatories demonstrate that Plaintiff's fraud claim, and perhaps wrongful termination claim, are "substantially dependent" upon the CBA. In particular, Defendant asserts that Plaintiff's interrogatory answers demonstrate that Plaintiff claims to be covered by the CBA between Safeway and Local 39 and therefore the terms of the CBA are in dispute and must be interpreted to resolve Plaintiff's claims. The Court disagrees.

All of Plaintiff's causes of action are premised on his assertion that under California law he should have been considered an employee rather than an independent contractor. In California, the test for employee status is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Department of Industrial Relations,* 48 Cal.3d 341, 350 (1989). Courts may also consider "whether the one performing services is engaged in a distinct occupation or business" and "the skill required in the particular occupation," among other factors. *Id.* at 351. Resolution of these questions does not require interpretation of a CBA. Defendant acknowledged as much by answering the complaint rather than removing this action to federal court when Plaintiff originally initiated the action.

Plaintiff's responses to interrogatories do not establish that Plaintiff's claims cannot be resolved without interpreting the CBA. *See Cramer*, 255 F.3d at 691. When asked whether he contends that he "should have received benefits in accordance with one or more" CBAs, Plaintiff responded that he "should have received the same benefits afforded all employees of the company." (Dkt. No. 1, 13:8.) Plaintiff is not claiming that Defendant engaged in fraud by misrepresenting that Plaintiff could not be a member of the union; rather, he is claiming that Defendant engaged in fraud by misrepresenting that he was an independent contractor rather than an employee, whether an employee covered by the CBA or not. Plaintiff answered Interrogatory 5—as to whether he performed any covered work—in the affirmative; however, he did not assert that because he performed some of the duties mentioned in the CBA he should have been treated as a covered employee.

When asked in Interrogatory 4 to "identify any benefit plans or programs" he believes he "should have participated in" or that he "intend[s] to use as a basis for calculating damages," Plaintiff included the "Stationary Local 39 Health and Welfare Trust Fund." (Dkt. No. 12-2, 10:2.) This response, however, does not necessarily mean that the CBA must be interpreted to resolve his claims. Indeed, in his pleadings on the motion to remand he clarifies that he is not "seeking to claim benefits as if he were a card carrying member of Local 39."

United States District Court
Northern District of California

1   (Dkt. No. 12, 10-13; Dkt. No. 25, 5.) This action is about whether he should have been an

2   employee, not whether he should have been a union employee.

3        Defendant posits that there may be a dispute as to whether, if Plaintiff should have been

4   treated as an employee, he should have been covered by the CBA and entitled to the same

5   wages and benefits as the union employees. However, "alleging a hypothetical dispute between

6   the claim and the terms of the CBA is not enough" to require preemption; "adjudication of the

7   claim must require interpretation of the CBA." *Cramer*, 255 F.3d at 691-92. On the record before

8   the Court it is purely conjecture as to whether a court will ultimately have to interpret the CBA,

9   and even then it would only be to compute damages.

10       That the state court may have to determine whether, if hired as an employee, Plaintiff

11  would have been covered under a CBA for purposes of damages does not mean Plaintiff's

12  claims are preempted. In *Wanland v. Los Gatos Lodge, Inc.,* 230 Cal. App. 3d 1507, 1517 (1991),

13  for example, a state trial court made a determination that an employee, originally hired into a

14  union position, was no longer covered under the terms of the CBA when she was promoted

15  into a management role. The court held that "[t]he mere fact that resolution of the issue

16  whether plaintiff was covered by the CBA entailed judicial scrutiny of its provisions does not

17  mean that her action is preempted. That issue is necessarily a threshold question in every state-

18  law wrongful termination action by a plaintiff who holds membership in a union." *Id.*; *see also*

19  *Ramirez*, 998 F.2d at 748 ("Causes of action that only 'tangentially involv[e]' a provision of a

20  collective-bargaining agreement are not preempted by section 301").

21       Further, "[t]he mere need to look to the collective bargaining agreement for damages

22  computation is no reason to hold the state law claim defeated by§ 301." *Livadas*, 512 U.S. at

23  125. Defendant's attempt to distinguish *Livadas* because the employee there was undisputedly a

24  union member covered by a CBA is unpersuasive. As the *Wanland* court held, if a plaintiff's

25  claim is independent of any rights under a CBA, the claim is not preempted merely because a

26  court may need to determine whether the employee is covered under a CBA. It is thus

27  unsurprising that Defendant does not cite any case—state or federal—in which preemption was

28  found under circumstances similar to those presented here.

*Levy v. Skywalker Sound*, 108 Cal. App. 4th 753 (2003) is inapposite. There, the plaintiff, an employee, expressly sought to enforce an agreement between the defendant and the union. *Id.* at 764. He argued that he was a third party beneficiary to the contract and that his employer's breach prevented him from joining the union. *Id.* at 760. This is exactly the type of breach of contract claim based on a CBA explicitly preempted under the LMRA. The plaintiff's fraud claim was also preempted because it was based on his employer's misrepresentation of his ability to join the union; the truth of the employer's statements regarding his union eligibility depended entirely on the court's interpretation of a complicated side-letter agreement that governed whether union members could work on the particular sound stage where the plaintiff was employed. *Id.* at 763. In other words, the plaintiff's right to damages, not just his measure of damages, depended on the court's interpretation of the union contract and the plaintiff would not have any claim absent the union contract. *Id.* at 770. Here, in contrast, all of Plaintiff's claims exist independent of the CBA. There is no preemption.

## ATTORNEYS' FEES AND COSTS

"If the Court finds that removal was improper, it may order the removing party to pay just costs and actual expenses, incurred as a result of the removal, including attorney fees." 28 U.S.C. § 1447(c). Fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). While the Court concludes that Defendant has not met its burden of proving that removal was proper, it also concludes, in its discretion, that an award of fees and costs is not warranted. The responses to interrogatories gave Defendant some basis, albeit an ultimately unsuccessful basis, for asserting removal jurisdiction.

*//*

*//*

*//*

*//*

*//*

*//*

United States District Court
Northern District of California

**CONCLUSION**

For the reasons explained above, the Court GRANTS Plaintiff's motion for remand and DENIES his request for fees.

**IT IS SO ORDERED.**

Dated: Sep. 26, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

10